All right, the last case we're going to hear today is Tommy Davis Construction v. Cape Fear Public Utility Authority. And Mr. Wilson, whenever you're ready. May it please the Court. My name is Jeremy Wilson, along with my law partner, Ralph Talo. We represent the defendants and the appellants in this matter, Cape Fear Public Utility Authority and New Hanover County. This case is about sewer impact fees that were charged by Cape Fear Public Utility Authority's predecessor, the New Hanover County Water and Sewer District, which I'll just refer to as the district. The plaintiff, a residential home builder, contends that these fees were beyond the district's statutory authority and also infringed on the constitutional protections of due process and equal protection. From 1987 to 2008, the district and New Hanover County had a policy in place in which sewer impact fees were charged for all new development within the jurisdiction, regardless of whether or not the property would immediately receive sewer services from the district. Now, these were impact fees. These weren't tap fees. They weren't user charges. They weren't connection fees. They were impact fees. And the rationale behind them was that they were... That language talks about the use of water or the service provided in the water. For services furnished or to be furnished. Well, that's right. But if it's a user fee, the idea is if the line's not in, you can't provide the service. You have to get it before you start building and it's going to be to be furnished. But if the water is being provided by a private utility, and that's with the acknowledgement of the authority, I'm not sure that that fee is... It sounds to me like that fee is a user fee. Well, two points, Your Honor. First, user fees, the way that they seem to be typically defined or connect, are associated with actual use. So like your monthly charge, for instance. Actual use for part of the plans to provide it. I mean, you can't get that fee almost every case. The fee's going to be collected before the service is provided. Sure. Because here it's construction and the construction isn't completed and so forth. Right. I guess I'm distinguishing fees from monthly service for water or sewer charges that you would receive in the mail for a bill in the mail or whatever else for actual use of the services. The amount of water you use, those sorts of things. That's how I'm defining user fee. There also are, as Your Honor indicated, connection charges or TAP fees, which sure do happen for service, but they're associated with definite service. You're definitely going to receive and be connected and receive services. Sometimes there's a meter connection charge, a TAP fee for tapping into the system. There's a host of charges that are not impact fees that are associated with actual use. Your Honor is correct that the statute we for services furnished or to be furnished. Our contention is that based on the planning documents in the record, based on the plans going back to 1976 and many plans from both the city, the county, and the district during this period in question, that the properties at issue in this case were within... You've had that plan in place for 40 years. Is that a reasonable evidence of intention? In other words, the plan ultimately is for the authority to serve everybody, I suppose, but at the same time, they recognize on all the maps and so forth, AQUA NC as a private utility and there's no effort to kick them out at this point, is there? Well, I certainly believe that the planning became more definite around the time of these charges. If you look at the studies in the planning... To get rid of AQUA? To provide services to this area. There's a 2006 master plan update that's in the record, Your Honor, that references AQUA as being the linchpin of whether or not to expand the capacity of the south side water treatment plant from 12 to 16 million gallons per day. References possible bulk sales, references possibly providing services if there's regulatory issues. Is there anything in the record that your client was ever going to actually provide services to Davis? In terms of a date certain, Your Honor, that is not in the record, but we don't believe that's the standard. The record is certainly full of references to that area. You said it was furnished or to be furnished. Correct. So when was it to be furnished? Where is that? That depends on the building of the capacity and the relationship with AQUA and whether or not and when those services might be furnished in the future. We don't believe, Your Honor... So you don't have that? We don't have a definite date, Your Honor, and we don't contend that there is a definite date. But we can say that that's not the standard. We don't believe that under North Carolina law or under the application to the federal constitutional questions that we have to point to a date certain. We believe that when you're a local government and you're planning and you're building out infrastructure and you're charging impact fees, not some of these TAP fees and these fees that are by definition associated with definite use, that you have the flexibility to charge those impact fees if the properties are within the jurisdiction and there are steps being taken to increase capacity and to take steps to actually provide those services at some point in the future. Now, if these properties weren't in our jurisdiction and maybe that's an extreme example, but certainly if there were no references whatsoever to us taking steps and considering these properties in our long-term plans, that would be a different situation in the record. But I don't believe that is a fair reflection of the record. But, Your Honors, we don't even believe that you get to those questions because we believe that there are serious statute of limitations and laches problems with this case. And frankly, those were not delved into in great detail with the district court opinion. A 10-year limitations period was applied in this case, citing the Amwar Holmes decision, which is a North Carolina Court of Appeals decision that was affirmed by an equally divided North Carolina Supreme Court. Because it was affirmed by an equally divided North Carolina Supreme Court, it's without precedential value. And further, Your Honors, this is really the only case that I can find, if you look in the notes and decisions, that it was affirmed by an equally divided North Carolina Supreme Court. So the Supreme Court's decision has no precedential value? That's exactly right. Yes, Your Honor. What about the intermediate court's decision? It's left standing without precedential value. It applies to the Court of Appeals decision. So if you look at the North Carolina Supreme Court's decision on appeal, it says on its face affirmed by an equally divided North Carolina Supreme Court. I know what it says, but it looks to me like they're referring, even though they refer to the Court of Appeals decision, the intermediate court's decision, they're referring to the fact that because it's equally divided, their decision has no precedential value, which I think is the general law. But is there some principle in North Carolina that the intermediate court's opinion loses all its value because it was affirmed by equally divided court? That's correct, Your Honor. It remains in place, but it remains in place without precedential value. So it's to be considered persuasive. And what principle is that? It's the way these are treated in North Carolina, Your Honor. I believe it's referenced on the face of the M-word. Yes, I read it. You're absolutely correct. But I don't understand how the intermediate court's decision all of a sudden loses its precedential value. And that's just the way it's applied in North Carolina, Your Honor. And besides the state Supreme Court's opinion that references the Court of Appeals case and states that it stands without that precedential value, I don't have a citation to that point. But that is what the state Supreme Court said about that intermediary opinion. It said that it was going to stand, but it was not going to stand with precedential value. So it's persuasive, but it no longer is binding in North Carolina. It's something that can be looked at, like an unpublished decision, I think is a fair analogy, to provide some guidance, but not to Let me go back to this other point. Is this McNeil v. Harnett County? Yes, Your Honor. They refer to these fees under Section 88 as user fees for services to be furnished. They call these user fees, which if that's right, if that's a right appellation and it looks like it might be supported by the statute, then it's connected with the use of the system that is receiving water and sewer either at the time or to be furnished. And this, it looks to me like there was no intent manifested at the time they applied for the Becker subdivision that it would be a user fee for that. It was just a general, at the time there were some generalized plans, someday we'd like to provide the services and we'll build the infrastructure to do so. Well, we certainly don't contend, Your Honor, that McNeil is exactly on point in terms of the same facts. It's not on point. It's just the way they refer to the statute as a user fee statute. And I think that's because of the specific facts in McNeil, Your Honor. In that case, there was going to be a user fee associated with connection to the system. The problem was that Harnett County at that time didn't have the funds to build out the system, hadn't been doing something maybe like charging impact fees, didn't do a general assessment. So what they did is they waived user fees for folks that wanted to pay early, go ahead and pay those charges. So they sort of morphed user fees into impact fees by allowing customers to pay early and not have to pay later. So it really was like a user fee that was being paid earlier. And I think that's why that user fee term is used in that case. We simply cite to McNeil for the proposition that the charging of fees under 162A-88 is not limited to the financing or maintenance or improvements for existing customers. And that isn't the case. That's why we cite to McNeil. But we certainly recognize that there are distinctions between the McNeil case and our case. And I think that's where the user fee language comes from, Your Honor. Your Honor, back to the statute of limitations issue. There really is no case besides Amor that says you apply a 10-year statute of limitations to ultra-virus claims or to constitutional claims. Look at the notes and decisions in North Carolina referencing 1-56, that 10-year catch-all provision that's relied on in this case. And this really is, Amor, the only one. It's got no precedential value. I don't believe that the Appellee cites to any other case law for this 10-year catch-all provision. And it's supposed to be exactly that. It's supposed to be a catch-all provision. And if you look at Amor, it sort of shows you the analysis that you go through. You have to really review all the other limitations period in that chapter in the North Carolina general statutes. Try to find one that applies. If none at all really does apply, then you get to the catch-all. Most of the cases that are unique trust and estates issues, they're not ultra-virus cases. They're not constitutional cases. So which other one do you think most applies? We think a liability created by statute most applies. Which statute created this liability? 162A-88, that the services need to be furnished or to be furnished. The heart of their claim, well, I guess there are two, Your Honor. I'll point to that first and there is a second one. The heart of their claim seems to be that we need to provide services sometime immediately after charging these fees and didn't do so. I don't know if it's a time immediately after. I think their notion is the fee is connected with the provision of services. It's a user fee and that's the term used multiple times in that opinion. The idea is that you're paying a fee. There's a quid pro quo for the provision of services now and to be furnished. But the idea of getting water and sewer, you can collect fees for that and you may be able to collect more fees. But the authorization does not go as a training impact for the whole county. And that's their argument. It doesn't go there so there's no authority. But that argument doesn't provide create a cost of action. That would be subject to the limitation provision you had. Well, we do believe there's implied liability there and that they're using that to create liability. If you're not, if you're charging those fees. Implied liability is the basically structural but constitutional issue of ultraviolence. When a municipality or a county or an authority acts beyond the authority given it, it's acting unconstitutional. And we don't believe that's the set of facts on this record in this case, Your Honor. This is not something like school impact fees in the Amwar decision where there's no statutory authority whatsoever for school impact fees. But the question is if the authority went beyond its authority in this statute and is ultraviolence, that cause of action is not by reason of the statute. We believe that when you can point to a specific statute that it is, and there's some good case law, Your Honor, in North Carolina that doesn't require there be specific language referencing a private right of action or having a separate damages provision, something along those lines, two cases side in our brief, the Hicks v. Wake County Board of Education regarding whether or not a teacher had career status. There are certain provisions that need to be followed under the law in North Carolina to determine if a teacher has tenure. Those weren't followed. A declaratory judgment action was brought related to that. I believe there might have been some due process implications in there as well. And those found to be a liability created by statute because the standard essentially was set by the statute. What you have to do is there under the statutory language. Another case in North Carolina, the state, the Custard case applied that in the context of a breach of fiduciary duty with officers and directors. That standard's in the statute, doesn't create a private right of action in the statute, but because you're pulling the standard from the statute, it is a liability created by statute. And Your Honors, if you're looking for a specific statute that has that type of language in it, look no further than their fourth claim for relief in this action, which is pursuant to section 153A-324, which specifically says that if a county charges an illegal fee or tax, something beyond its authority, then that's to be refunded and there's to be 6% interest paid on it. What if somebody applied for a march permit to march down the city? And the city said, we'll give you the march permit, but you've got to give us an impact fee for our sewer system. And the marchers say, nonsense. And they pay it under protest and then sue. It's ultra-virus, right? It is. I think it's very distinguishable. And you think that's subject to the, that cause of action is created by the statute? I do not, because I think you're dealing with a different factual situation than you have here. Here, you're dealing with specific properties. I was just trying to create a little more extreme hypothetical, but it's still the same principle. You're either authorized to collect the fee or you're not. If you're not authorized to collect the fee, then it seems to me it's ultra-virus and the statute doesn't give you the cause of action. The cause of action is created by the constitutional structure. Well, you certainly cross the line there somewhere, Your Honor. And under the hypothetical, you do. Under our case, I do not believe that you do cross the line. And the reason is we have specific authority, including for services to be refunded. That's argument on the merits. You're talking about if their claim is correct, their argument is that the statute provides no basis for this cause of action. You didn't have any authority, any more than you had authority to collect from the marchers. And sure, the marchers is far more remote. So that goes to maybe some notion of comfort that we weren't so culpable. But that still doesn't mean you're in the statute. I think it does under those facts. If you're marching down the road, you're never going to need sewer services. You're certainly not a piece of property sitting within our jurisdiction subject to our planning documents that's referenced in making decisions about building out capacity for our treatment plants. I do think you cross the line. We're sure clearly you're outside the statute under that example. But we're not here. This is a sewer impact fee for a specific set of properties. They're within our jurisdiction. They're subject to our planning documents. But if we find that you were outside the bounds, and it is ultra-vires, then you do agree that the 10-year statute of limitations would apply. Not the 3-year, because you said the 3-year wouldn't apply to the marchers. Because it was ultra-vires. So if we find that this is ultra-vires, then the 3-year also doesn't apply to this, correct? I don't agree, Your Honor, because I think the heart of their claim is that the way in which we applied justified authority under statute, because we clearly had authority for sewer impact fees, clearly within our jurisdiction, that it creates some obligation to provide immediate services. We didn't do that, and it flows from that statute, the liability. It's different than that hypothetical. And I get that some of these cases are about line drawing, and you can recreate an extreme situation where clearly it wouldn't apply, and you've clearly crossed the line and become ultra-vires. But we don't believe that's the case here. We have some backup statutes of limitation. We also believe there's a real latches issue under both state and federal law. I knew you had gone through your red light. Oh, I'm sorry. You want a ticket? I apologize. The numbers kept going, so I looked down, and it wasn't a zero. Yes, Your Honor, now it's like a 36. You've got rebuttal. I apologize. We'll bring you back up. Thank you, Your Honor. Sure. Mr. Cox? I may it please the Court, my name is Bradley Cox. I'm representing the appellee in this case, Tommy Davis Construction. We're here today because the appellants in this case have assessed sewer and water impact fees for services that they did not provide, that they had no ability to provide, and still, 10 years after they first assessed these fees, they still have not provided. I will first begin with some of the threshold questions regarding the statute of limitations. We do rely on the Amward case and the 10-year statute of limitations. As Niermeyer pointed out, that case was affirmed by the Supreme Court by an equally divided court. Regardless of whether or not it's precedential in North Carolina, it's fairly persuasive, being that the Court of Appeals, they went through that analysis of all of the statutes, and they did not find any that applied to a due process issue with ultra-virus, and in particular, impact fees. So they applied that catch-all 10-year statute of limitations. Now, the only reason that that Court of Appeals decision went up to the North Carolina Supreme Court was because Judge Jackson, in that case, she was affirmed by the Court of Appeals, but found that the case was interlocutory, and so her dissent was based on that. Coincidentally, she then went to the Supreme Court, and that's why it was affirmed by an equally divided court, because she recused herself. But that Supreme Court decision did not have any analysis within it, and if you look at the briefs by the petitioner, they did not even argue that 10-year statute of limitations issue. That was not an issue that was even addressed by the petitioner, and the petitionee said that that was abandoned. So, we do contend that the 10-year statute of limitations applies. I'll talk briefly about the three-year statute of limitations that the appellants point to as a liability created by the statute. If you look at all of their cases where they've cited this particular statute of limitations argument, both in North Carolina and outside of North Carolina, if you remove the statute from those cases, you remove the liability. They have no claim. In this case, if you remove the statute that they claim creates the liability, 162A-88, you remove that statute, our case doesn't go away. It actually becomes stronger, because then they're assessing impact fees with not even colorable legal authority. So, we would contend that that statute, as well as the other three-year statutes that they cite, did not apply in this case. And therefore, even if you do not consider AMWRD, you still go through that same AMWRD analysis, and you get to the only thing left after all the other statute of limitations have been disposed of, is the 10-year statute of limitations. Going to the merits of the case, there is no plan in any of the 1800 or 2000 cases that pages of documents that are all in the record that establish that they had taken any concrete steps, that they've taken any plans, they had taken any infrastructure, any environmental studies, any analysis of how much is it going to cost. There's nothing in those records anywhere. Isn't it required to do that? Isn't that a prerogative of the sovereignty to do that? For example, governments move slowly. Where in the statute or any other law in the North Carolina that requires them to move at any pace, fast, slow, whatever? Well, Your Honor, in their reasonable exercise of their authority under 162A-88, which provides for them to assess fees for services furnished or to be furnished, not might be furnished or could be furnished, but will be furnished. That's a mandate. Now there's not a time frame within that statute, but still, as Judge Howard pointed out at the district court level, you have to exercise that authority reasonably. And for them to say that they've had these plans since 1976 and they haven't quite gotten around to it yet, we would argue is unreasonable as a matter of law. They did not have any intent to do it. They didn't have any plan to do it. And in addition to the planning, you also have to have the ability to carry out this plan. And in this case, all the areas in Becker Woods and the surrounding subdivisions called the Cape, the Cape has been serviced by Aqua North Carolina and its predecessor companies since the mid-80s when the Cape was developed. Aqua and Fairways, I believe, was providing these services. They are a public utility, privately owned, and they're regulated by the North Carolina Utilities Commission. That Utilities Commission, when they applied, found that they had to get a Certificate of Convenience and Necessity saying that nobody else was going to go in there. Regardless of that, Aqua North Carolina has eminent domain power under Chapter 62 of the North Carolina Statute, as does New Hanover County, as did the district, as does Cape Fair Public Utility Authority. But one eminent domainer cannot take from another eminent domainer. So even if they did somehow plan to provide services, they had no ability, they had no eminent domain ability to take over Aqua's infrastructure, to use Aqua's infrastructure to provide services. So there's, even if they went through the... Well, you have the counterproductive possibility that they could run a parallel line. That's right, Your Honor, they could do, they could spend millions and millions of dollars to run a pipe right next to Aqua's pipe, but even if they did that, they don't have the statutory authority under Article 1 of Chapter 162A to hook up, to force anybody at Becker and the Cape, or anywhere being serviced by Aqua North Carolina, they can't force them by statute to hook up as long as Aqua's provided services. Probably wouldn't get a utility certificate if there was somebody else in there. Under Chapter 162A, Article 1, the public utility authority, the Cape Fair Public Utility Authority, any public utility authority, is not allowed to force anybody to hook up to Would the authority have to get, if they're going into a new area, would they have to get a certificate of necessity from the State Utility Commission? I do not know how that procedure would work, Your Honor. All I can see is the statute, and the statute says that they are not allowed to go in there. I don't know who makes that determination, if it's the courts or the Utilities Commission, but that determination has to be made that they can't go in there. If they, and if the possibility exists that Aqua leaves and abandons, and they go back into, and they do provide services at some point in the future, they still have the authority to assess impact fees or any other fees at that time. Now, if this court finds and upholds the district court, and those funds are refunded to my client, they're not prejudiced because if the next year or the next 10 years or 2055, when their planning documents suggest it, they hook up to Becker Woods, and somehow they have to hook up to Becker Woods, at that time they can go ahead and assess the impact fees at that time. So there's not prejudice in that case. So they don't have the ability, they don't have the planning, and they don't have any of the imminent domain authority to provide those services. That concludes my argument, Your Honors. Do you have any additional questions? Thank you, Mr. Cox. Thank you, sir. Mr. Wilson. Thank you, Your Honors. Just very briefly, note on procedural history that I meant to mention during my primary argument. Just want to make the court aware that these issues are being considered currently by the North Carolina Court of Appeals and some other pending litigation involving different property owners besides the plaintiff in this matter. Not asking the court to abstain, just want to bring it to the court's attention in case the court saw that as they were working on this opinion. What I would like to talk about, Your Honors, is back to that statute of limitations and liability argument. With statute of limitations, I do encourage you to look at those cases regarding a liability created by statute. I do think many of those are applicable, including the ones without the direct damages or liability provisions, including some from other jurisdictions that deal specifically with taxes and- The latches argument. The latches argument, Your Honors, is that they've waited over five years to bring this lawsuit and they don't have a reason for waiting over five years. They were on notice when this happened that they believed these charges were improper. Well, how does the latches and the statute of limitations, let's assume for a moment that the statute of limitations is ten years. Theoretically, that means somebody brings the suit within eight years, the legislature says that's fine. Now, you're saying because they went beyond five years, they're barred by an equitable doctrine. And I'm wondering how you propose those operate together. You still, you do have cases in North Carolina, Your Honor, where somebody can be within the statute of limitations, but if the facts are such that they've waited in such a way that's not justified and there's prejudice to the defendant, then they can be barred. That's my point. I think the notion of latches was an equitable doctrine where somebody counts on the fact that suit hasn't been filed, even though the limitations hadn't run and changed its position to prejudice. But here, we don't have that circumstance. The authority is not prejudiced by the failure to bring the suit. As a matter of fact, to the contrary, since then, the authority doesn't even collect that fee. I respectfully disagree, Your Honor, based on the cases in North Carolina. There are several cases where somebody waited, and usually they're about two years, coincidentally, to bring a lawsuit to challenge government action. And the prejudice is that the government's already moved forward with taking steps based on that action. Entering into contracts, spending money, initiating policy. There's a case specifically dealing with... Does it prejudice them to have to pay back $34,000? It does prejudice you, and the language also deals with changing positions, and it does prejudice you when you spend that money. That money's been spent, that's in the record, to build out the capacity of the Southside Wastewater Treatment Plant, taking these folks into consideration. And the latches doctrine is aggressively applied in North Carolina law with regard to local governments, and it makes sense, because it's not just two private parties. You get too far down the tracks on entering into contracts, spending public money, making these charges with other people, and undoing that has a lot of difficulty associated with it. What's the legislature's view about giving the statute of limitations? I mean, you have a three-year tort statute of limitations, and somebody waits two years and eight months and files suit, and you come in and say, hold it, I would have been able to defend this suit much better had you filed it earlier. And you say you can't bring the suit because of latches. There's something problematical with that. If you hit the elements, the equitable considerations of latches, you can limit shorter than the statute of limitations. It's not clear what limitations period applies, and latches have been applied. We have to assume the 10, for my purposes of argument, that there is a statute of limitations and that they had protection under the statute of limitations. You're saying they lose that protection because of latches. And the question is, what equitable conduct are they imputed with to cause them to lose the benefit of their statute of limitations? Well, first of all, this is a catch-all provision, which I think is an important distinction. The legislature has not reached out and said, specifically, you have this amount of time for this type of claim. Yeah, but that's challenging. I'll give you a hypothetical. I don't want to get into the merits. You keep wanting to slide into the merits. Yes, Your Honor. My hypothetical is you have an automobile accident, three-year statute of limitations, and the plaintiff waits for two years and 10 months and files suit. And the defendant comes in and says, hold it. I've changed my position. I've fired my lawyers.     I've changed my position. I've fired my lawyers. I have to get new lawyers. They're more expensive today. to defend this case. And they raise latches. What's your answer to that? We're not contending that it's the issues that's more expensive to defend this case, though. We do believe that policy decisions have been made. Circumstances are different, such that we're being prejudiced. And there are cases directly analogous to this type of situation in North Carolina, applying to ultra-virus claims associated with local government conduct, to injunctions, declaratory actions, and constitutional claims. There are four-circuit cases, as well, where claimants...     None of the four-circuit cases. None of the four-circuit cases. And so, the question is, how do you propose to administer those two statutes? Because they both can apply concurrently, Your Honor. You can have a limitations period. That's the default. But if the circumstances are such where latches under equity should limit the action based on the unique facts and circumstances of the case, it's an equitable doctrine. You can have the latches doctrine limit the statute of limitations period. So, I think under your hypothetical, if there were... I just don't think... And maybe I'm getting into the merits of your hypothetical, as well. But I don't think, under that scenario, you have a hard time applying latches. But I think you certainly could have a situation where latches limits somebody shorter than three years. It just depends on the equitable considerations, whether it's prejudice, and whether parties have changed positions. And we think that applies here. And I encourage you to look at those cases in North Carolina. Okay. Thank you, Mr. Wilson. Thank you. We'll adjourn court for today, and then come down and greet counsel. Is this all in support of today's adjournment? This is Melissa Marmoni. God save the United States. This is all in support.
judges: Paul V. Niemeyer, Roger L. Gregory, Stephanie D. Thacker